UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ROBERT HELMUS and
MARIAN HELMUS,

       Plaintiffs,

v.

CHASE HOME FINANCE, LLC and
JPMORGAN CHASE BANK, N.A.,

       Defendants.

Case No. 1:11-CV-1016

HON. GORDON J. QUIST

_____/

## **OPINION**

    Plaintiffs, Robert and Marian Helmus, filed their Complaint in the Circuit Court for the County of Kent, State of Michigan, on or around August 9, 2011.  On September 22, 2011, JPMorgan Chase Bank, N.A. ("Chase"), timely removed the action to this Court.  All of the claims arise out of a mortgage Plaintiffs obtained on their real property located at 8109 Oldfield Ct. SE, Byron Center, Michigan ("Property").

    Plaintiffs allege the following claims against Chase: (1) breach of contract, (2) promissory estoppel, (3) a violation of Michigan's Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251, and (4) a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*  Chase moves to dismiss all of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). Having reviewed the parties' written materials, the Court concludes that oral argument is unnecessary to an informed decision on the motion.  For the following reasons, the Court will grant Chase's motion to dismiss, and dismiss Plaintiffs' Complaint.

## I. BACKGROUND

The following facts are taken from Plaintiffs' Complaint and accepted as true for purposes of the instant motion to dismiss.

In 2005, Plaintiffs purchased their Property located at 8109 Oldfield Ct. SE, Byron Center, Michigan. On about May 19, 2006, Plaintiffs executed a promissory note, and granted a mortgage interest in the Property to JP Morgan. In 2008, Plaintiffs began to fall behind in their mortgage payments, and Plaintiffs worked with Chase to attempt to resolve any default in their mortgage.[1] Plaintiffs claim that in May of 2009, Chase offered Plaintiffs a Home Affordable Modification Program ("HAMP") Trial Period Plan ("TPP"), pursuant to which Plaintiffs were to make three payments of $1223.33 each. HAMP is a federal program enacted pursuant to the Emergency Economic Stabilization Act, P.L. 110, 110-343, 122 Stat. 3765. HAMP was designed to assist homeowners in avoiding foreclosure by offering lenders incentives to offer borrowers modifications with more favorable terms. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012). Pursuant to HAMP, the Secretary of the Treasury negotiates Servicer Participation Agreements with servicers such as Chase, which require servicers to identify eligible homeowners who are in default or will likely soon default and to modify the terms of their loans. *Id.* Chase entered into a Servicer Participation Agreement ("SPA") with Fannie Mae (acting as an agent of the federal government), in which Chase agreed to apply the Treasury Department's HAMP criteria to all of the loans it services. As this Court has previously explained, the HAMP guidelines specify that

> [A] servicer follows three steps to determine whether a borrower is eligible for a modification. First, the servicer determines whether the borrower meets certain

---

[1] Chase, a wholly-owned subsidiary of JP Morgan, apparently serviced Plaintiffs' mortgage loan during all relevant times. Chase subsequently merged into JP Morgan Chase Bank, N.A. (Def.'s Br. Supp. Mot. to Dismiss Ex.C.)

2

> threshold requirements. Second, the servicer applies various changes in order to lower the monthly mortgage payment as close as possible to 31 percent of the borrower's monthly income. Finally, applying a net present value test, the servicer determines whether it is more profitable for the lender to modify the loan or to allow it to go into foreclosure.

*Brady v. Chase Home Fin.*, No. 1:11-CV-838, 2012 WL 1900606, at *3 (W.D. Mich. May, 24 2012).

As part of this process, when the servicer identifies a borrower who may qualify for a HAMP loan modification, the servicer offers the borrower a two-step TPP. The first step of the process is a trial payment period, usually lasting three months, during which the borrower provides loan modification documentation to the lender and makes trial payments under the new loan repayment terms. *Wigod*, 673 F.3d at 557. The second step of the process is a permanent modification, which occurs if the borrower makes all of the payments in the modified amounts and complies with all of the requirements of the TPP. *Brady*, 2012 WL 1900606, at *3.

The TPP Cover Letter Chase sent to Plaintiffs stated:

> You may qualify for a Home Affordable Modification Trial Period Plan . . .
>
> If you qualify under the federal government's Home Affordable Modification program and comply with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure . . . .
>
> The monthly trial period payments are based on the income information that you previously provided to us. They are also our estimate of what your payment will be IF we are able to modify your loan under the terms of the program. If your income documentation does not support the income amount that you previously provided in our discussions, two scenarios can occur: . . . 2) You may not qualify for this loan modification program.

(Def.'s Br. Supp. Mot. to Dismiss Ex. D at 20.) Furthermore, the TPP Cover Letter states that "[t]he Trial Period Plan is the first step. Once we are able to confirm your income and eligibility for the program, we will finalize your modified loan terms and send you a loan modification agreement[,]" (*Id.* at 22) and "[p]lease note, however, that your modification will not be effective unless you meet

3

all of the applicable conditions[.]" (*Id.* at 24.) The TPP Cover Letter also stated that if the person applying for HAMP makes their first payment and does not qualify for the program, the "first trial payment will be applied to your existing loan in accordance with the terms of your loan documents." (*Id.*)  Additionally, the TPP stated, "This Plan will not [take] effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan [with] the Lender's signature." (Pls.' Resp. Br. Ex. B at 1) The TPP also stated:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (I) I meet all of the conditions required for modification, (II) I receive a fully executed copy of a Modification Agreement, and (III) the Modification Effective Date has passed.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan documents if I fail to meet any one of the requirements under this Plan.

(*Id.* at 3.)

Plaintiffs accepted the TPP, submitted their paperwork, and began making payments in May 2009.  Chase lost the paperwork for the TPP, and as a result, Plaintiffs submitted the TPP paperwork a second time.  Chase repeatedly asked for new documents, and Plaintiffs allegedly complied with every request in a timely manner.  If Plaintiffs successfully completed the trial modification, Defendant allegedly agreed to make the loan modification permanent.  After the third payment, Plaintiffs continued making payments equal to the TPP payments.  On at least one occasion, Chase allegedly sent Plaintiffs a second proposed TPP with less favorable terms.  In May 2010, approximately a year after beginning the 3-month TPP, Chase sent Plaintiffs a letter stating that Plaintiffs were denied a permanent modification because they had failed to provide all requested documents.  After the denial letter, Plaintiffs disputed the decision with Chase and continued to make payments equal to the TPP payments. Chase then stopped accepting payments from Plaintiffs.  Throughout the time that Chase serviced Plaintiffs' mortgage loan, Chase allegedly misapplied

4

payments, failed to apply payments, and placed improper and unauthorized charges on Plaintiffs' account.

## II. MOTION STANDARD

Pursuant to Rule 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)).  The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  Although the plausibility standard is not equivalent to a "'probability requirement,'...it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct - the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

Although a court is normally precluded from considering matters outside of the pleadings in addressing a motion under Fed. R. Civ. P. 12(b)(6), courts recognize an exception for documents attached to or referenced in the complaint.  "When a court is presented with a Rule 12(b)(6) motion,

it may consider the Complaint and any exhibits attached thereto...so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

### III. DISCUSSION

**A. Motion to Dismiss**

**1. Breach of Contract**

In Count 1 of Plaintiffs' Complaint, Plaintiffs allege that they entered into a contract with Chase to "modify the existing mortgage and loan, whereby Plaintiffs agreed to make payments pursuant to the TPP, and upon the successful completion of that TPP, Defendants agreed to provide Plaintiffs with a permanent loan modification." Plaintiffs allege that although they complied with all of the requirements of the TPP, Chase breached the TPP by failing to provide them with a permanent modification. Plaintiffs also allege that Chase breached the implied covenant of good faith and fair dealing by failing to handle their account, payments, and communications in an acceptable and fair manner in accordance with the contract's provisions.

*HAMP Does Not Bar Plaintiffs' Breach of Contract Claim*

As an initial matter, the Court addresses Chase's argument that because HAMP provides borrowers no private right of action, Plaintiffs may not maintain a breach of contract action premised on a TPP, a HAMP-related document.

Chase's argument is essentially an extension of the conclusion that a majority of courts have reached that HAMP does not provide a private right of action to borrowers. *See In re Lopez*, 446 B.R. 12, 21-22 (Bkrtcy. D. Mass. 2012) (noting that "a majority of courts have held that HAMP affords no private right of action"). This Court has reached the same conclusion. *See Wyler v. Bank of Am.*, No. 1:11-CV-132, 2011 WL 5361077, at *5 (W.D. Mich. Nov. 7, 2011) ("HAMP does not

provide plaintiffs with a private right of action."). Citing this Court's decision in *Wyler*, Chase argues that because the TPP is a part of HAMP, the TPP cannot form the basis of a state-law breach of contract claim. *Id.* However, in *Brady v. Chase Home Finance, LLC,* No. 1:11-CV-838, 2012 WL 1900606, at *5 (W.D. Mich. May 24, 2012), this Court followed *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), which rejected the argument "that where Congress does not create a private right of action for violation of a federal law, no right of action may exist under state law either." The Seventh Circuit stated in *Wigod* that "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some elements of the federal law." *Id*. at 581. Plaintiffs in this case are bringing a claim for a breach of contract, not a claim under HAMP. This distinction differentiates this case from *Wyler* and all other cases Chase cites. *See LaSalle Bank v. Nat'l Ass'n v. Ray*, No. 09-13526, 2011 WL 576661, at *5 (E.D. Mich. Feb. 9, 2011) (Stating that "the statutes 'do not create a private right of action under which Plaintiff may seek relief"); *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010) ("[t]he statutes do not create a private right of action under which Plaintiff may seek relief. 'There is no express or implied right to sue fund recipients...under TARP or HAMP.'"); *Brown v. Bank of N.Y. Mellon*, No. 1:10-CV-550, 2011 WL 206124, at *2 (W.D. Mich. Jan 21, 2011) ("All of the district courts that have considered the issue have held that homeowners do not have a private right of action under HAMP for denial of a loan modification."); and *Adams v. U.S. Bank*, No. 10-10567, 2010 WL 2670702, at *4 (E.D. Mich. July 1, 2010) ("Federal district courts have held that homeowners do not have a right to a loan modification under HAMP."). Given the lack of any persuasive analysis to support Chase's argument, this Court agrees with those courts, including the Seventh circuit, that have found that the lack of private right of action under HAMP does not preclude a plaintiff from maintaining a breach of contract claim based

on a TPP. *See Picini v. Chase Home Fin. LLC*, __ F. Supp. 2d __, 2012 WL 580255, at *5 (E.D.N.Y. 2012) ("Defendants have not pointed to any 'rule that where a state common law theory provides for liability for conduct that is also violative of federal law, a suit under the state common law is prohibited so long as the federal law does not provide for a private right of action.'" (quoting *Fletcher v. One West Bank, FSB*, 798 F. Supp. 2d 925, 930-31 (N.D. Ill. 2011))); *Bolone v. Wells Fargo Home Mortg., Inc.*, No. 11-10663, 2012 WL 882894, at *4 (E.D. Mich. Mar. 14, 2012) (rejecting the defendant's argument that HAMP preempts state breach of contract claims based on a TPP).

### *The Statute of Frauds Bars Plaintiffs' Breach of Contract Claim*

With regard to claims against financial institutions, Michigan's statute of frauds provides:

(2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:

(a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

(c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

M.C.L.A. § 566.132(2). This provision applies to an action against financial institutions based upon a promise to modify a loan and is "'unambiguous.'" *Ennis v. Wells Fargo Bank, N.A.*, No. 1:10-CV-751, 2011 WL 1118669, at *3 (W.D. Mich. Mar. 25, 2011) (quoting *Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000)). Moreover, it applies to any "claim-no matter its label-against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech.*, 242 Mich. App. At 550, 619 N.W.2d at 72.

Under the statute of frauds, Plaintiffs cannot maintain a breach of contract claim as the TPP was not signed by an authorized representative of Chase. Plaintiffs attempt to cure this defect by relying on the cover letter that accompanied the TPP that was signed "Sincerely, CHASE HOME FINANCE LLC." However, Michigan courts interpret the requirement of an "authorized signature" as that of "an authorized representative" of the financial institution. *See Cadle Co. II, Inc. v. P.M. Group, Inc.*, No. 275099, 2007 WL 3119569, at *2 (Mich. Ct. App. Oct. 25, 2007) (per curiam). Because the cover letter was not signed by an authorized representative of Chase, the statute of frauds bars Plaintiffs' breach of contract claim.[2]

### *The TPP Did Not Ripen Into An Offer*

The introductory paragraphs of the TPP Cover Letter, to which the TPP was attached, explained the process for obtaining a loan modification stating:

> You *may* qualify for a Home Affordable Modification Trial Period Plan - a way to make your payment more affordable. We have enclosed a customized Home Affordable Modification Trial Period Plan...*If you qualify under the federal government's Home Affordable Modification program* and comply with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure.

(Defs.' Br. Supp. Mot. to Dismiss at 20 (italics added).) The TPP Cover Letter contains five sections titled: (1) Provide the info we need to help you; (2) Let us know that you accept this offer; (3) Complete your checklist; (4) Important program info; and (5) Frequently asked questions. Section One notified Plaintiffs of the information they had to submit to "take advantage of this offer[,]" and stated:

---

[2] Plaintiffs assert that even if the statute of frauds bars their claim, they may proceed against Chase on a theory of equitable estoppel. Plaintiffs' equitable estoppel argument lacks merit as a result of the TPP stating in plain terms that it would not become effective until Chase and Plaintiffs "sign it and [Chase] provides [Plaintiffs] with a copy of this Plan [containing Chase's] signature." (Pls.' Resp. Br. Ex. B at 2.) It would have been unreasonable for Plaintiffs to believe that they could accept the offer even though they had not received a copy of the TPP signed by Chase. *See Adams v. City of Detroit*, 232 Mich. App. 701, 591 N.W.2d 67, 70 (1998).

9

> The monthly trial period payments are based on the income information that you previously provided to us. They are also our estimate of what your payment will be *IF* we are able to modify you loan under the terms of the program. *If* your income documentation does not support the income amount that you previously provided in our discussions, . . . (2) *You may not qualify for this loan modification program*.

(*Id.* (italics added).) Additionally, Section Three suggests that Plaintiffs should "Act Now! To accept this offer, and see if you qualify for a Home Affordable Modification[.]" (*Id.*) Furthermore, Section Four states:

> The Trial Period Plan is the first step. Once we are able to confirm your income and eligibility for the program, we will finalize your modified loan terms and send you a loan modification agreement . . . which will reflect the terms of your modified loan.

(*Id.* at 22.) Finally, Section Five states "that your modification will not be effective unless you meet all of the applicable conditions," and that if the person does not qualify for the program their "first trial payment will be applied to [their] existing loan in accordance with the terms of [their] loan documents." (*Id.* at 24.)

> The TPP agreement stated,
>
> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (I) I meet all of the conditions required for modification, (II) I receive a fully executed copy of a Modification Agreement, and (III) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan documents if I fail to meet any one of the requirements under this plan.

(Pls.' Resp. Br. Ex. B at 3.) The TPP agreement additionally informed Plaintiffs that,

> I [Plaintiffs] understand that after I . . . return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan [if I] qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not [take] effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan [with] the Lender's signature.

(*Id.* at 1.)

As a federal court sitting in diversity, this Court applies Michigan substantive law. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) ("Under the *Eire* doctrine,

federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law."). Under Michigan law, a binding contract requires an offer, acceptance, consideration, and "a meeting of the minds on all essential terms." *Kilian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 452-53, 733 N.W.2d 766, 770 (2006). Contracts should be construed to give effect to the intentions of the parties and to give a reasonable meaning to all provisions. *Klever v. Klever*, 333 Mich. 179, 186, 52 N.W.2d 653, 656-57 (1952). If the language of the contract is clear and unambiguous, the court should construe it according to its plain sense meaning. *Grosse Point Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 198, 702 N.W.2d 106, 113 (2005).

The language of the TPP is clear and unambiguous. Plaintiffs attempt to prove that the TPP is an offer by using statements such as "[i]f I [the borrower] am in compliance with this Trial Period Plan . . . and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement . . . .[,]" and "the Lender will send me a Modification Agreement." (Pls.' Resp. Br. Ex. B at 1.) However, these statements are taken out of context and must be read with the rest of the document to obtain their actual meaning. The opening paragraph of the TPP Cover Letter states that Plaintiffs "*may* qualify for a Home Affordable Modification Trial Period Plan," and continues "*if* you qualify under the federal government's Home Affordable Modification program." (Def.'s Br. Supp. Mot. to Dismiss Ex. D at 1.) Additionally, the TPP cover letter states:

> The monthly trial period payments are based on the income information that you previously provided to us. They are also our estimate of what your payment will be *IF we are able to modify your loan under the terms of the program.* If your income documentation does not support the income amount that you previously provided in our discussions, . . . (2) *You may not qualify for this loan modification*.

(*Id.* (Italics added).) The TPP Cover Letter also states that once the eligibility for the program is confirmed, Chase will "finalize your modified loan terms and send you a loan modification

11

agreement . . . which will reflect the terms of your modified loan." (*Id.* at 3.) Finally, the TPP itself states that

> I [Plaintiffs] understand that after I...return two copies of this Plan to the Lender, the Lender will send me a copy of this Plan [if I] qualify for the Offer or will send me a written notice that I do not qualify for the Offer. This Plan will not [take] effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan [with] the Lender's signature.

(Pls.' Resp. Br. Ex. B at 3.) By its plain terms, the TPP makes it clear that it was not an offer, and would not become binding on Chase until the contract was signed and returned to Plaintiffs, which it was not. As a result, there was no offer for Plaintiffs to accept.

### 2. Promissory Estoppel

In Count 2, Plaintiffs allege a claim of promissory estoppel. A claim of promissory estoppel is an equitable remedy and requires that there be "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance..., and (4) in circumstances such that the promise must be enforced if injustice is to be avoided." *Ardt v. Titan Ins. Co.*, 233 Mich. App. 685, 692, 593 N.W.2d 215, 219 (1999). "The promise must be definite and clear, and the reliance on it must be reasonable." *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41, 761 N.W.2d 151, 166 (2008) (citing *Ypsilanti Twp. v. Gen. Motors Corp.*, 201 Mich. App. 128, 134, 506 N.W.2d 556, 559 (1993) (per curiam)).

Plaintiffs' promissory estoppel claim fails for two reasons. First, any reliance on the TPP as a promise for loan modification from Chase would have been unreasonable because the TPP explicitly stated that the Plaintiffs still had to qualify for the Home Affordable Modification and Chase had to send Plaintiffs the signed loan modification agreement, neither of which occurred. Second, similar to the breach of contract claim, the promissory estoppel claim does not escape the

statute of frauds. *See Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 912 (E.D. Mich. 2012) (citing *Crown Tech. Park*, 242 Mich. App. at 550, 619 N.W.2d at 72). Therefore, the promissory estoppel claim must be dismissed.

### 3. Regulation of Collection Practices Act Claim

Plaintiffs allege in Count 3 that Chase violated the Regulation of Collection Practices Act ("RCPA") also known as the Michigan Regulation of Collection Practices Act ("MRCPA"). The RCPA "prohibits abusive collection efforts...with respect to obligations arising out of a 'purchase made primarily for personal, family, or household purposes.'" *Levant v. Am. Honda Fin. Corp.*, 356 F. Supp. 2d 776, 782 (E.D. Mich. 2005) (quoting M.C.L. § 445.251(a)). Plaintiffs allege that Chase violated the RCPA by "a) [m]aking inaccurate, misleading, untrue, or deceptive statements in communication to collect a debt; b) [m]isrepresenting the legal rights of the creditor or debtor; c) [a]nd using a harassing, oppressive, or abusive debt collection method. MCL 445.252." (Compl. ¶ 55.) Chase argues that this claim must be dismissed because Plaintiffs fail to plead "any facts illustrating the existence of any violation." (Def.'s Br. Supp. Mot. to Dismiss at 17.) The Court agrees. When ruling on a motion to dismiss, a court "need not accept . . . legal conclusions as true." *Heyne v. Metro. Nashville Pub. Schs.*, 665 F.3d 556, 564 (6th Cir. 2011). Additionally, while detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). Furthermore, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Plaintiffs contend that their claim properly incorporated by reference all of their previous allegations that provide basis for their claim. Taking into account all statements made in the complaint regarding the TPP, none of Plaintiffs' allegations establish that Chase violated the RCPA. The TPP Cover Letter clearly states that the Plaintiffs "*may* qualify for a Home Affordable Modification Trial Period Plan[,]" and furthermore, that Plaintiffs "may not qualify for this loan modification program." (Def.'s Br. Supp. Mot. to Dismiss Ex. D at 20.) Chase did not make any inaccurate, misleading, untrue, or deceptive statement by failing to offer Brady a loan modification pursuant to the TPP. Accordingly, this claim will be dismissed.

### 4. Violation of RESPA Claim

In Count 4 (erroneously designated as Count 6), Plaintiffs allege that Chase violated RESPA by failing to acknowledge their qualified written request (QWR). Plaintiffs state that under the Dodd-Frank Financial Reform Bill, Chase failed to acknowledge the receipt of the QWR within the required five day period and failed to respond within thirty days.[3] Chase argues that Plaintiffs "have not alleged any legitimate damages occurring as a result of this failure." (Def.'s Br. Supp. Mot. to Dismiss at 19.) The Court agrees. Courts have held that in order to maintain a RESPA claim, a plaintiff must allege that the violation resulted in actual pecuniary damages. *See Pliam v. Cendant Mortg. Corp.*, Civ. No. 11-3720 (RHK/JSM), 2012 WL 1439035, at *3 (D. Minn. Apr. 26, 2012) ("While RESPA itself does not set a pleading standard, courts have interpreted the statute to require a showing of pecuniary damages in order to state a claim."); *Shum v. Experian Info. Solutions*, No.

---

[3] Plaintiffs correctly allege in their complaint that the twenty-day and sixty-day periods under 12 U.S.C. § 2605(e)(1)(A) were shortened to five days and thirty days, respectively, by the Dodd-Frank Act. *See* Pub. L. 111-203, Title XIV, §§ 1400(c), 1463(c), July 21, 2010. Courts have noted some uncertainty as to the effective date of this provision. *See Nikiforuk v. CitiMortgage, Inc.*, No. 11-10815, 2011 WL 7113469, at *5 n.3 (E.D. Mich. Dec. 27, 2011) (citing *Solan v. Everhome Mort. Co.*, No. 10-CV-2280-H (RBB), 2011 WL 456013, at *2 n.2 (S.D. Cal. Feb. 3, 2011)). For purposes of the instant motion, however, the Court need not decide the issue.

C 12-0496 PJH, 2012 WL 1376979, at *1-2 (N.D. Cal. Apr. 19, 2012) (noting that the actual damages alleged "must be pecuniary in nature" and the plaintiff's allegations of damage to his reputation and added cost of obtaining credit were "too conclusory to demonstrate that [the plaintiff] has sufficiently pled pecuniary damages"). Plaintiffs allege that they "suffered damage from Defendants' failure to comply with RESPA, including but not limited to knowing the accuracy of any statements made by Defendants, and not knowing whether Defendants properly applied payments prior to the Agreement." (Compl. ¶ 72.) As a result, Plaintiffs request that this Court "enter a judgment for damages together with interest, costs and attorney's fees[,]" in addition to statutory damages. (*Id.* ¶ 73.) Such allegations are insufficient to show actual pecuniary damage. *See Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899 EMC, 2011 WL 6294472, at *8 (N.D. Cal. Dec. 15, 2011) (holding that the plaintiff's allegations that she was harmed by not knowing the true owner of the note and whether her payments were properly applied were "insufficient to allege the pecuniary harm required by the statute"). Therefore, Plaintiffs' RESPA claim must be dismissed as a result of failing to allege actual pecuniary damage.

**B.     Request to Amend**

In response to Chase's Motion to Dismiss, Plaintiffs have requested leave to amend their complaint to address any pleading deficiencies. This request was made in Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss, and Plaintiffs have not filed a motion to amend. Pursuant to Fed. R. Civ. P. 15(a)(2), a court "should freely give leave [to amend] when justice so requires." As stated in *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698-99 (6th Cir. 2004), however, "a bare request in an opposition to a motion to dismiss - without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)." In this case, Plaintiffs failed to follow the proper procedure for

requesting leave to amend, which is to file a motion to amend. *See La. Sch. Emp. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471 (6th Cir. 2010) (holding that the district court properly dismissed the plaintiffs' claims and request to amend when plaintiffs did not file a motion to amend); *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618 (6th Cir. 2008). Additionally, this Court cannot determine that "justice so requires" an amendment as no substance to the proposed amendment has been given to this Court. *See*, *e.g.*, *Kostyu v. Ford Motor Co.*, No. 85-1207, 1986 WL 16190, at *2 (6th Cir. July 28, 1986) (holding the district court did not abuse its discretion in not allowing the plaintiff to amend his complaint because "[t]he plaintiff did not submit a proposed amended complaint and failed to disclose what amendments he intended to make"). Plaintiffs have failed to file a motion to amend and this Court has not received a proposed amended complaint. For the reasons stated above, this Court will deny Plaintiffs' request to amend.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Chase's motion to dismiss under Fed. R. Civ. P. 12(b)(6) in its entirety.

An Order consistent with this Opinion will enter.


Dated: August 27, 2012                             /s/ Gordon J. Quist
                                                GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE